```
1                   IN THE UNITED STATES DISTRICT COURT
                    FOR THE SOUTHERN DISTRICT OF TEXAS
2                              HOUSTON DIVISION


3

     UNITED STATES OF AMERICA        )
4                                    )
     v.                              )       NO. H-15-CR-617-1
5                                    )       January 12, 2017
     ERNESTO HERNANDEZ-MONTEMAYOR    )
6


7


8                              SENTENCING
                    BEFORE THE HONORABLE ALFRED H. BENNETT
9


10


11


12   For the Government:          Arthur Jones, AUSA
                                  U. S. Attorney's Office
13                                1000 Louisiana, Suite 2300
                                  Houston, TX 77002
14
                                  Christopher Cestaro
15                                Kevin R. Gingras
                                  Trial Attorneys
16                                U.S. Department of Justice
                                  1400 New York Avenue, NW
17                                Washington, DC  20005

18   For the Defendant:           Stanley G. Schneider
                                  Attorney at Law
19                                440 Louisiana, Suite 800
                                  Houston, TX  77002
20
                                  Philip H. Azar, II
21                                Attorney at Law
                                  2000 Smith Street
22                                Houston, TX  77002

23   Court Reporter:              Bruce Slavin, RPR, CMR

24
     Proceedings reported by mechanical stenography and produced
25   by computer-aided transcription.
```

1          THE COURT:  Good morning.  Thank you.  Please have

2     a seat.

3                Cause No. 15-CR-617, United States of

4     America v. Ernesto Hernandez Montemayor.

10:01   5          MR. JONES:  Rob Jones, Kevin Gingras and Chris

6     Cestaro for the United States, Your Honor.  Good morning.

7          THE COURT:  Good morning.

8          MR. SCHNEIDER:  Stanley Schneider and Phil Azar for

9     Mr. Ernesto Hernandez-Montemayor, Your Honor.

10:01  10          THE COURT:  Thank you.

11                And, sir, what is your name?

12          THE DEFENDANT:  Ernesto Hernandez-Montemayor.

13          THE COURT:  Let the record reflect that the

14     Defendant is present, has an interpreter who will interpret

10:02  15     the proceedings for him as well as being represented by

16     legal counsel.

17                Counsel, you-all may have a seat.

18                This is a sentencing hearing in this case.  I

19     want to briefly describe the Court's sentencing procedures.

10:02  20                The Supreme Court has held in *United States v.*

21     *Booker* that the United States Sentencing Guidelines are

22     advisory, not mandatory, for judges.  *Booker* requires a

23     sentencing court to consider guideline ranges, but it

24     permits the Court to tailor the sentence in light of other

10:02  25     statutory concerns as well.

1          The Court, in the exercise of its sentencing

2     discretion, therefore, will rely on the factors set out in

3     Section 3553(a) to fashion an appropriate sentence in this

4     case to achieve the congressionally mandated purposes of

10:02     5     sentencing as set forth in the Sentencing Reform Act of

6     1984.  The Court will endeavor to faithfully apply these

7     directives within the guidelines in their entirety to

8     determine the total offense level and criminal history

9     category under the guidelines.  Thereafter, the Court will

10:03     10     exercise its discretion to determine the appropriate

11     sentence.  In so doing, the Court will give considerable

12     weight to the sentencing range calculated under the

13     Guidelines.

14          Any comments by the Court in the course of

10:03     15     this sentencing are not to be construed as indication that

16     the Court, in fact, believes that the Guidelines are

17     mandatory or that they constrain the Court's ultimate

18     sentencing discretion.

19          The standard of proof for factual findings in

10:03     20     connection with sentencing is preponderance of the evidence.

21     In determining whether that standard is met, a presentence

22     report is generally considered sufficiently reliable to be

23     considered by the trial court as evidence in making the

24     factual determinations required by the sentencing

10:03     25     guidelines.

1          In preparation for today, I've reviewed the

2     presence investigation report, the government's motion

3     for a 5K1 departure, Defendant's objection to the

4     presence report, the unopposed motion for preliminary

10:04   5     order of forfeiture.

6          Taking the bench, I was made aware of an order

7     amending the preliminary order of forfeiture to include

8     substitute assets.

9          Counsel for the government, were there any

10:04   10    additional documents that were provided to the Court for the

11    purposes of this hearing?

12         MR. JONES:  Not for this hearing, Your Honor.

13         THE COURT:  Okay.  Counsel, any additional

14    documents that were provided?

10:04   15         MR. SCHNEIDER:  No, Your Honor.

16         THE COURT:  Very well.

17          In connection with objections to the

18    presence report, the Court notes that the government has

19    not filed any objections to the presence report.

10:05   20          In connection with the defense, the defense

21    did file an objection to the presence report,

22    specifically to Paragraph 42, where there was an additional

23    enhancement for the Defendant's alleged position of trust.

24          Mr. Schneider, I'll hear you on your

10:05   25    objection.

1          MR. SCHNEIDER:  Your Honor, as based on the

2    presentence report, as Mr. Hernandez describes to the

3    agents, he was a middleman between companies in the United

4    States and government officials in Mexico.

10:05    5          He was just -- They -- The offense could not

6    be committed without the approval of the people in Mexico

7    who were -- approved every invoice, authorized the payments

8    and were within the government.

9          So, it's not just a question of him being a

10:06   10    pilot bringing the plane to the United States to be

11    processed by -- I mean, be repaired by a company and the

12    company then preparing an invoice and sending it to Mexico.

13    It's the people in Mexico in the government -- one of the

14    people has not been charged, Mr. Samano -- and other people

10:06   15    in the government who had to approve the invoices and

16    authorize the payments.

17          And, so, without them -- That's where the

18    trust is, is in the government and the agency that

19    authorized the payment and not just being the middleman who

10:06   20    flew the planes, presented the planes and received the

21    payments from the companies.

22          So, we don't think that's a position of trust.

23    That means any middleman -- any person has a position of

24    trust just because you are a pilot or a doctor or a lawyer

10:07   25    or whatever because of your position.

```
 1              So, we believe that the -- because he is the
 2    middleman, it's not a position of trust within the meaning
 3    of the guidelines; and, so, the two levels should not be
 4    considered.
10:07  5         THE COURT:  Well, first of all, let me get to an
 6    administrative matter.
 7              Is it correct to refer to your client as
 8    "Mr. Hernandez" or "Mr. Montemayor"?
 9         MR. SCHNEIDER:  Hernandez, Your Honor.
10:07 10         THE COURT:  Mr. Hernandez.
11              In regard to Mr. Hernandez, he was not just a
12    pilot.  He was the chief pilot.  Is that correct?
13         MR. SCHNEIDER:  Yes, Your Honor.
14         THE COURT:  And in the presentence report,
10:07 15    specifically in Paragraph 28, Mr. Hernandez confirms that he
16    had a position as an official of the foreign state
17    government.  Is that correct?
18         MR. SCHNEIDER:  Yes, Your Honor.
19         THE COURT:  And in regards to his position as a
10:07 20    chief pilot, did he have any discretion in regards to his
21    duties?
22              And the reason that I ask that question, in
23    your objection, you lay out the two-part test:  first,
24    whether the Defendant occupied a position of trust.
10:08 25              And I believe that Mr. Hernandez in
```

1    Paragraph 28 -- or in referencing Paragraph 28 of the

2    presentence report, stated that he, in fact, was the

3    official of the foreign state government.  Correct?

4         THE DEFENDANT:  [In English]  Yes.

10:08    5         THE COURT:  Part 2, whether the Defendant abused

6    his position in a manner that significantly facilitated the

7    commission or concealment of the offense.

8              In presenting your objection, you described

9    him as a middleman, which would go to the facilitation of

10:08    10   the commission of the crime.

11        MR. SCHNEIDER:  The crime -- If the planes weren't

12   being taken to the United States to be serviced -- In answer

13   to your question about discretion, he could choose where to

14   take a plane to be serviced.

10:09    15             And as pointed out in Paragraph 29, there were

16   multiple companies and multiple planes that were servicing

17   the planes for -- servicing the planes and the helicopters.

18             And, so, discretion -- taking a plane to a

19   particular company, that would be discretionary.  Having the

10:09    20   plane serviced, that's something that had to be done.  He

21   had no choice but to get the plane serviced and to take care

22   of the planes and make sure they were in flying order.

23             So, he was doing his job in getting them

24   serviced, but the crime of creating the invoices for excess

10:09    25   money and getting them sent to the government for payment,

1   he had no role in getting the government to approve that

2   amount or paying that amount and transferring the money to

3   the United States -- the companies, who then gave him the

4   money and then he disbursed the money.

10:10   5   So, the discretion is limited to the choice

6   of which company would go -- would get the contract for

7   payment -- or for servicing the plane.

8   So, yes, there's some discretion, but not the

9   type of discretion that one might see in a....  I'm trying

10:10   10   to think of an example.  But it's not the same as what I

11   think is envisioned because the actual control of the money,

12   the control or approval of the contract, the processing of

13   the --

14   THE COURT:  You say control over the money, but the

10:10   15   money was deposited into his accounts --

16   MR. SCHNEIDER:  Yeah.

17   THE COURT:  -- which he disbursed.

18   MR. SCHNEIDER:  And he disbursed.

19   THE COURT:  All right.

10:11   20   MR. SCHNEIDER:  So, I think -- Because what

21   happened in Mexico, without that governmental approval and

22   government oversight for people that were above him in the

23   governmental agency, he had limited control.

24   THE COURT:  Very well.

10:11   25   Anything from the government on Defendant's

1    objection to the presentence report?

2            MR. CESTARO:  No, Your Honor.  We just rest on the

3    papers.

4            THE COURT:  Very well.

10:11    5            The objection is overruled.

6            Any other objections from defense?

7            MR. SCHNEIDER:  No, Your Honor.

8            THE COURT:  Mr. Hernandez.

9            THE DEFENDANT:  [In English] I'm sorry.

10:11   10            THE COURT:  Do you need your -- the headphones?

11            MR. AZAR:  No, he doesn't.

12            THE COURT:  Mr. Hernandez, your counsel has lodged

13    an objection to the presentence report, which I've now dealt

14    with.  I'm inquiring as to you personally.

10:12   15            Have you seen the presentence report?

16            THE DEFENDANT:  [In English]  Yes.

17            THE COURT:  Have you reviewed the presentence

18    report with your legal counsel?

19            THE DEFENDANT:  [In English]  Yes.

10:12   20            THE COURT:  Has he answered all of your questions

21    regarding the presentence report?

22            THE DEFENDANT:  [In English]  Yes.

23            THE COURT:  Do you personally have any additional

24    objections that you need to be heard on as to the

10:12   25    presentence report?

1          THE DEFENDANT:  [In English]  No.

2          THE COURT:  Very well.  Thank you.  You may have a

3   seat.

4              These are the Court's final guidelines

10:13   5   findings and legal conclusions.

6              The total offense level is a 24.  The criminal

7   history category is a I.  Based upon those findings, the

8   guidelines provide for a term of imprisonment of 51 to

9   63 months, a term of supervised release of one to three

10:13   10   years, a fine of $10,000 to $4,585,220 and a

11   one-hundred-dollar special assessment.

12              What is the government's position on

13   sentencing?

14          MR. JONES:  Your Honor, it's really kind of two

10:13   15   parts.  As you've seen, we did file a motion under 5K of the

16   guidelines as well.

17              But, clearly, the offense itself is a serious

18   offense.  It is an international offense and, as the Court

19   has seen from the facts, it did have impact in this country

10:14   20   as well as abroad.

21              We do believe the guidelines are correctly

22   scored at the 51-to-63-month range, of course.  And we

23   think -- Given the nature of the offense and given the facts

24   that we have detailed in the motion that we filed, we do

10:14   25   feel that an appropriate sentence in this case would be a

1    34-month sentence of confinement.

2         THE COURT:  I was mulling over that number.  And to

3    get to that, I understand that there is a standard practice

4    of basically a third off, but you understand that that's a

10:14  5    four-level departure.

6         MR. JONES:  Yes, Your Honor.  I mean, I'll say

7    that, yes, we do, because the guidelines are advisory now.

8    We generally -- Our practice is we look at the range that we

9    think is appropriate and we think about what would we

10:14  10   recommend the Court sentence a defendant at without a 5K.

11   In this case, that would probably be the 51-month low end,

12   given the fact that there isn't any criminal history and

13   things like that.  And then we'd make a recommendation

14   within our office for approval about a sentence that we

10:15  15   think would be appropriate.

16        That is the process we used here within our

17   office and within the Department of Justice, since we're

18   both on this case.  The agreed recommendation was to be a

19   third off.  It's not an automatic one-third off or anything

10:15  20   like that.  We do think that, given what the Defendant did,

21   as detailed in our motion, that the one-third is appropriate

22   in this case.

23        We do understand how -- when you look at the

24   guideline chart, how the levels looked and where they

10:15  25   correspond to, but I can tell the Court we didn't actually

1    consider how many levels we're going to recommend off, being

2    that the guidelines are advisory.  And, so, we just

3    recommended the 34-month sentence, which we think for all

4    the facts and circumstances of this case would be an

10:15  5  appropriate sentence.

6              THE COURT:  Very well.

7                   What is the defense's position on sentencing?

8              MR. SCHNEIDER:  Well, Your Honor, there's several

9    factors that I think are important.  And it's unusual that

10:16  10  you have a presentence report that details who the person is

11   being sentenced, who Mr. Hernandez is, and details the

12   extent of his cooperation.

13                   This is an unusual situation.

14                   On November 8, 2015, when Mr. Hernandez was

10:16  15  taken into custody on a complaint out of Brownsville, he

16   immediately began the journey of cooperation.  He

17   immediately answered questions.

18                   Once he had counsel, we spent several days

19   answering questions and going through the process of

10:16  20  explaining what was happening, how it was happening, who was

21   involved.

22                   The presentence report suggests maybe a

23   limited debriefing, but there have been five or six

24   different meetings with the government, answering their

10:17  25  questions about who, what, where and how.

1       What is pointed out in the presentence report,

2   the 5K is based upon the names of individuals, the

3   executives that were involved, but also the roles of the

4   companies involved, the extent of the companies, how things

10:17   5   worked with the companies.

6       And, so, over a process of time, over the last

7   15 months -- Mr. Hernandez's cooperation did not begin after

8   indictment.  We waived indictment.  We're proceeding on an

9   information.

10:18   10       Everything has been streamlined to show his

11   cooperation, to show his remorse and to show his desire to

12   make amends for what he did.

13       The agreement to forfeit $2.2 million is part

14   of the plea.  It was all part of the statement of trying to

10:18   15   fulfill his obligation for what he did wrong.

16       So, we're going to be asking the Court --

17   we're asking the Court to give him time served, and the

18   reason for that is -- there is a reason for my madness.

19       Normally, when a person is sentenced to BOP --

10:18   20       THE COURT:  And just so that we're clear, as to the

21   time served, what is the time served as of today?

22       MR. SCHNEIDER:  Approximately 15 months.

23       And the reason I'm saying 15 months or some

24   variation -- something close to that, is that on a 34-month

10:19   25   sentence -- Normally, the Bureau of Prisons will release a

1    prisoner to a halfway house to allow them to get back into

2    society with supervision, get a job, work, and acclimate

3    them to being free.

4              Because Homeland Security withdrew

10:19  5    Mr. Hernandez's visa upon his arrest, he has no legal status

6    in the United States.  So, immediately upon -- when he gets

7    ready to be released from prison, he'll be sent to Homeland

8    Security for deportation proceedings.  And, so, the benefit

9    of a halfway house he will not get for being acclimated back

10:19  10   into society.

11             And then, once he gets into immigration

12   proceedings, it will be sometimes 30, 60, 90 days of

13   processing just for the government to get him deported.

14             And, so, we start getting into this process of

10:20  15   what is the purpose of punishment, what is the purpose of

16   what we're trying to do when you have someone who has

17   attempted to make amends by his cooperation, by agreeing to

18   the forfeiture.  And the forfeiture of what we have signed

19   today is an agreed order for amending the preliminary order

10:20  20   of forfeiture to substitute free assets -- a piece of

21   property in The Woodlands, an airplane and a Mercedes.

22             And then the other aspect of Mr. Hernandez is

23   that -- and he will speak to this, also -- is that he has

24   extensive family who are here who have come from Mexico to

10:20  25   be supportive of him -- his brothers and sisters and

1    sisters-in-law.  His wife and three kids couldn't travel

2    here.  So, he has extensive support and he's not alone in

3    Mexico and he's going to go back to a loving situation.

4              But while he's been in custody, he lost his

10:21   5    mother last June.  And what he has gone through, by being

6    separated from his children and his wife and a loving

7    family, is that he's realizing the importance of freedom and

8    realizes how he's got to basically start his life over again

9    in Mexico because he spent his life as a pilot and he's not

10:21   10   going to be able to -- His ability to work as a pilot is

11   going to be limited because he's never going to be able to

12   come back to the United States.

13             Once he's deported because of his felony

14   conviction, he's going to have to get the approval of the

10:22   15   Attorney General to land an airplane in the United States.

16   So, any job he gets as a pilot has to be within Mexico or

17   with a company that will allow him to just only fly south or

18   east, but he can't fly north.

19             And, so, his ability to work is going to be

10:22   20   limited; and, so, he's going to have to start all over

21   again.  Because of his status as a pilot, his lifetime

22   profession, things are limited.

23             And, so, we're going to ask the Court to --

24   given the extent of the cooperation -- the instant

10:22   25   cooperation, the waiver of indictment, the proceeding --

1    instantly agreeing to proceed with the government and

2    working with the government constantly on trying to make

3    amends, we believe that a sentence substantially less than

4    34 months is something that is justified, given the

10:23    5    bureaucracy of Homeland Security, the extent of his

6    cooperation, the extent of his work that he's done and the

7    remorse and the suffering he's had based upon the loss of

8    his mother and being unable to have his children and wife

9    even visit him has been limited because of distance and

10:23    10    because of being away from his family.

11    So, we believe 15 months may be low, but

12    that's -- he's already served that and I believe it's -- He

13    gets 45 days' credit for every year that he's in custody for

14    good time or good behavior.  He's got a job as a trustee

10:24    15    in -- at Joe Corley right now.

16    So, that would add another month and a half to

17    his sentence that he's earned.  That would be 16 months.

18    And if he gets a 34-month sentence, that's two more months

19    that he would get credit for.  That would be 18 months.

10:24    20    So, I think that a sentence around 15 to

21    18 months would be reasonable, given the nature of

22    deportation, given the nature of what he's done and what

23    work he has done since he's been in custody and since he was

24    arrested.  So, that's what we're asking for, Your Honor.

10:24    25    THE COURT:  Very well.

```
 1              Mr. Hernandez, this is your opportunity to
 2    address the Court and for you to tell me what you would like
 3    for me to consider prior to pronouncing sentencing.
 4              But by way of my concerns about this case,
 5    there were three points of contact, one which was the
 6    subject of your defense counsel's objection to the
 7    presentence report in that you had a position of trust which
 8    you abused.  Second was that there was significant personal
 9    enrichment involved in this case.  The sums were not
10    insignificant.  And third was the widespread conspiracy, the
11    number of folks who were involved in this cross-border
12    crime.
13              So, in my review of the case, those were the
14    three things that stood out to me.
15              And, obviously, you have something that you
16    want and need to say to me, but after the conclusion of what
17    you've thought about, I'd like for you and for your attorney
18    to circle back and just address those concerns for me.
19              So, I want to first hear from Mr. Hernandez
20    and then, Mr. Schneider, I'll give you an opportunity to....
21              MR. SCHNEIDER:  Your Honor, Mr. Hernandez speaks
22    English.  He and I communicate very well in English, but
23    sometimes -- If the Court could repeat its inquiry.
24              THE COURT:  Yes.
25              MR. SCHNEIDER:  I want to make sure he understands
```

1    the question.

2                    THE COURT:  Very well.

3                         Mr. Hernandez, in reviewing this case --

4                    MR. AZAR:  One second, Your Honor.  Sorry, Your

10:27    5    Honor.

6                    THE COURT:  In reviewing this case, there were

7    three areas of concern that -- three areas that caught my

8    attention.

9                         One was the subject of your counsel's

10:27   10   objection to the presentence report, which was that you were

11   in a position of trust with a foreign government and that

12   trust was abused.

13                        Secondly, there was significant personal

14   enrichment.  These sums that we're talking about were not

10:28   15   insignificant.  Understand?

16                        And third was the vast number of people -- in

17   this conspiracy, the number of people involved in this

18   cross-border crime.

19                        You have probably some prepared remarks or

10:28   20   something that you've thought about that you want to tell

21   me, and I want to hear you out fully on your remarks.

22                        At the conclusion of those remarks, if you

23   could, circle back and address these three areas as to

24   importance to me.  And I'll give your attorney the same

10:28   25   opportunity because some of it may be more legal than

1    something that you're going to address.  But those were the

2    three areas that caught the Court's attention.

3              With that being said, Mr. Hernandez, please,

4    it's your opportunity to address me and tell me what you

10:29    5    want me to consider and what you want me to think about

6    prior to sentencing.

7              THE DEFENDANT:  [In English]  I can speak in

8    English.

9              THE COURT:  And, counsel, will you pull his mic a

10:29   10   little bit closer to him that's in front of your screen

11   right there.

12             MR. SCHNEIDER:  Yes.

13             THE COURT:  Thank you.

14             THE DEFENDANT:  Your Honorable Judge Bennett, I

10:29   15   apologize for reading this, but I'm not a good speaker and

16   writer.  I am nervous and scared.

17             I should not be here because I born and raised

18   (crying) by the best parents that anybody could have.  They

19   taught me right from wrong.  I wish to have them here, but,

10:30   20   unfortunately, they passed away.

21             I apologize -- Sorry.  I apologize also to my

22   wife and kids -- they are not here because they don't have

23   legal papers -- and my daughters and my sisters for the

24   embarrassment I have caused to them.

10:31   25             We all make mistakes, and my problem was to

1    stay around the wrong people who put too much pressure on

2    me.   I know temptations are everywhere.

3                So, all this time that I've been in this

4    detention center made me think all the good things I am

10:31    5    missing, to see my kids and my wife back again, and I

6    praying every night nothing happen to them.

7                But one thing happened.   It was the worst.

8    Last June 14, 2016, my mom passed away and I didn't have the

9    chance to thank her for giving me life.   I didn't have the

10:32   10    chance to tell her about how much I love her and all the

11    things they did for me.

12                Many nights I lie awake and think how I was

13    wrong, but I also think of doing right.   When I get out, I

14    teach my kids to do right.   I apologize to this country, and

10:32   15    I respect your laws.

16                God bless you all.

17            MR. SCHNEIDER:   If I may ask.

18            THE COURT:   Actually, I'm going to give you the

19    last word to talk about those questions that I posed.

10:33   20                Before coming back to you, Mr. Schneider,

21    anything else from the government?

22            MR. JONES:   Your Honor, I'm sure the Court knows

23    this.   I mean, we don't dispute the Defendant's

24    remorsefulness or anything like that.   He did accept his

10:33   25    responsibility.   We think that's captured under the

1    acceptance guideline.

2                We think our recommendation overall is fair

3    and takes into account what he did, and we base that on --

4    You know, we've seen a lot of people who help out in a lot

10:33   5    of different cases and some people do more than others.  We

6    think our recommendation is fair based on what this

7    defendant did in this case.

8                THE COURT:  Very well.

9                Mr. Schneider.

10:33  10                MR. SCHNEIDER:  In addressing your question and

11   having Mr. Hernandez address this question, if I may pose a

12   couple of questions to him, that may facilitate you getting

13   your answers.

14                THE COURT:  Very well, sir.

10:34  15                MR. SCHNEIDER:  Mr. Hernandez, the people in Mexico

16   in the government, who were they?

17                THE DEFENDANT:  [In English]  Okay.  There was

18   the -- I don't know how you explain it -- the guy who take

19   care of some of the money in the government, the -- what we

10:34  20   call the treasurer, and this is the treasurer of the private

21   secretary of the governor.

22                The other one is the treasurer -- the general

23   treasurer of the state.  And the other one was the

24   administration of the government.

10:34  25                They put the pressure on me because I

1    didn't -- they start fabricating invoices.  I have to sign

2    it so they can get that thing.

3         MR. SCHNEIDER:  The $1.6 million that you got, did

4    you get all of it or did other people get it as well?

10:35   5         THE DEFENDANT:  No.  They get it as well.  They

6    don't do nothing if you don't -- if you don't -- I mean,

7    they put that pressure to you so they can get the money.

8    So, they -- That's the way they work.  I cannot explain more

9    different.

10:35   10        MR. SCHNEIDER:  And the companies here in the

11   United States, who picked those companies out?

12        THE DEFENDANT:  We make selections of three

13   companies.  And what they want is the ones that like to do

14   that kind of things.

10:35   15             And when they start, they told me -- say,

16   "Ernesto, you have an account in the United States."  I have

17   a little account here.  For them it isn't easy not sending

18   the money back to Mexico.  I don't know why.

19             So, they were telling me, "You have the money.

10:36   20   We can send it to your account."  I didn't know the law.

21   So, they put it in my account.

22        MR. SCHNEIDER:  And, so, you have the people in

23   Mexico telling you what to do, and you had to do it --

24        THE DEFENDANT:  Yes.

10:36   25        MR. SCHNEIDER:  -- to keep your job?

```
 1                THE DEFENDANT:  Yes.

 2                MR. SCHNEIDER:  You have the people in the United

 3     States who are willing to do it --

 4                THE DEFENDANT:  Yes.

 5                MR. SCHNEIDER:  -- to get the business from Mexico?

 6                THE DEFENDANT:  Yes.

 7                MR. SCHNEIDER:  And the 1.6 million that you got,

 8     how much more of that money was given to people in Mexico?

 9                THE DEFENDANT:  The rest of the money, the total

10     amount.

11                MR. SCHNEIDER:  Well, you got some.

12                THE DEFENDANT:  Yes.

13                MR. SCHNEIDER:  And you got bonuses and things like

14     that.

15                THE DEFENDANT:  Yes.

16                MR. SCHNEIDER:  So, there's a lot of different

17     people involved?

18                THE DEFENDANT:  Yeah.  There was about five or six

19     people involved.

20                THE COURT:  All right.  Given the unusual nature of

21     that, anything else from the government?

22                MR. JONES:  The only thing we would say is the

23     Defendant certainly kept a large portion of the money, as

24     the Court knows.

25                     That's all, Your Honor.
```

1          THE COURT:  Very well.

2              Mr. Schneider, your last word.

3          MR. SCHNEIDER:  Yes, Your Honor.

4              I think that answered the Court's question

10:37   5  that -- When I listened to the initial debriefing, the role

6  of the government officials working for the government or

7  the state that he came from, Mr. Samano, that's where it

8  starts from.

9              And I think you'll see on Page 5 of the

10:37  10  guideline, Paragraph 19 -- no -- excuse me -- the chart with

11  Mr. Samano, I think it says 600-some-odd thousand dollars

12  went to him, but the other money went to other people.  And

13  but for the -- Then you have the companies here, the people

14  that were paying here.

10:38  15              This is a serious crime, but Mr. Hernandez is

16  forfeiting a piece of property in The Woodlands, he is

17  forfeiting an airplane and is forfeiting a car, so that he's

18  divesting himself of most of -- properties almost equal to

19  the 1.6 million that he's received, with the property, the

10:38  20  car and the airplane.

21          THE COURT:  Were those proceeds of the crime

22  itself?

23          MR. SCHNEIDER:  No, Your Honor, but they're assets

24  that he has.  That's why they're substitute assets.  Most of

10:38  25  the proceeds are gone.  Because this goes back to -- 2007 is

1    when the initial payments are being made; and, so, you're

2    dealing with money that was paid almost a decade ago.

3                    And, so, I think that, in this instance,

4    while the government may think that their recommendation of

10:39   5    34 months is reasonable -- it is; we appreciate the 5K --

6    you have discretion under *Booker* to go -- once the 5K is

7    filed, it shows that the Court has unfettered discretion to

8    do what is appropriate.

9                    And while this is a serious offense, while

10:39   10    this is international payoffs to companies for business that

11    the government has frowned upon, this is a case that

12    Mr. Hernandez, I think, deserves a little mercy.

13                    And losing -- given the situation of not being

14    able to see his children for 15 months, not being present

10:40   15    for the loss of his mother, that's punishment in and of

16    itself that exceeds being locked up.

17                    I ask the Court to consider that in assessing

18    punishment that's appropriate, given those circumstances.

19    We ask for time served, but under two years would be --

10:40   20    would facilitate his getting back to his family.

21            THE COURT:  Very well.

22                    Defense counsel makes compelling arguments

23    which I want to briefly address.

24                    On behalf of Mr. Hernandez, defense counsel

10:41   25    points out that, in regards to Mr. Hernandez's profession,

1    it will be severely impacted and that he will not be able

2    to -- I believe the phrase used was "to fly north" as a

3    result of having to seek Attorney General approval before

4    landing here in the United States.  However, this inability

10:41  5    to fly north without this approval is the direct result of

6    the Defendant's criminal conduct.

7              In addition, the Defendant suffered the loss

8    of his mother, for which he has the Court's condolences and

9    for which he was not able to visit her, be at her bedside.

10:42 10   But, again, this was the result of the Defendant's criminal

11   conduct.

12             The Defendant in his statement, as well as

13   defense counsel's presentation, mentions that the Defendant

14   has become separated from his family, including his three

10:42 15   minor children and his extended family; but, again, this is

16   a result of the Defendant's criminal conduct.

17             The government, for its part, has acknowledged

18   the substantial and meaningful assistance provided by the

19   Defendant in unpacking and unravelling this conspiracy and,

10:43 20   as the Court reads the record, it directly led to the

21   indictment of others involved in the conspiracy and the

22   information provided by the Defendant streamlined the

23   prosecution of this case.

24             The government has recommended a 34-month

10:43 25   sentence as a result of the meaningful and substantial aid

1    provided by the Defendant in the prosecution of this case.

2                    As a result of the foregoing, pursuant to the

3    Sentencing Reform Act of 1984, it is the judgment of the

4    Court that the Defendant, Ernesto Hernandez Montemayor, is

10:43    5    hereby committed to the custody of the Bureau of Prisons to

6    be imprisoned for a term of 24 months.

7                    Upon release from imprisonment, the Defendant

8    shall be placed on supervised release for a term of one

9    year.

10:44    10                   Within 72 hours of release from the custody of

11    the Bureau of Prisons, the Defendant shall report in person

12    to the probation office in district to which the Defendant

13    is released.

14                    While on supervised release, the Defendant

10:44    15    shall not commit a federal, state or local crime, shall

16    comply with the standard conditions that have been adopted

17    by this court under General Order No. H-1996-10, abide by

18    any mandatory conditions required by law, and shall comply

19    with the following additional conditions:

10:44    20                   The Defendant shall not possess a firearm,

21    ammunition, destructive device or any other dangerous

22    weapon.

23                    If deported, the Defendant is not to reenter

24    the United States illegally.  If the Defendant is deported

10:44    25    during the period of probation or the supervised release

term, supervision by the probation officer becomes inactive.

If the Defendant returns, the Defendant shall report to the nearest US probation office immediately. Supervision by the probation office reactivates automatically upon the Defendant's reporting.

The Defendant shall cooperate in the collection of a DNA sample from the Defendant, if the collection of such a sample is authorized, pursuant to Section 3 of the DNA Analysis Backlog Elimination Act of 2000.

It is further ordered that the Defendant shall pay to the United States a special assessment of $100.

The Court finds, based upon the information provided in the presentence report, that the Defendant does not have the ability to pay a fine and the Court will waive the fine in this case.

Having assessed the Defendant's ability to pay, payment of total criminal monetary penalty shall be due as follows:

The Defendant shall make a lump-sum payment of $100 due immediately.  Payment is to be made through the United States District Clerk, Southern District of Texas. Payment of criminal monetary penalty shall be due during the period of imprisonment.

Anything else from the government?

```
 1              MR. JONES:  Your Honor, just a couple of issues.
 2                   Forfeiture in this case.  We do have the
 3    preliminary order of forfeiture, which I believe should be
 4    made final at this time.
 5              MR. SCHNEIDER:  I have the order.
 6              MR. JONES:  There's an additional document.  After
 7    that's filed, it sounds kind of strange to say this, but we
 8    are now -- Once that's signed, we will ask that it be
 9    amended -- immediately amended -- I know that sounds
10    strange, but that's just the terminology used in the
11    rules -- amend that order to address the substitute assets.
12    And we have prepared an order and all parties have signed
13    that.
14              THE COURT:  Hand that to the --
15              MR. JONES:  That needed to be done after the
16    preliminary order became final, which is one reason why we
17    didn't e-file it ahead of time and, also, because we needed
18    to put all of our signatures on it.  So, I did send an
19    advance copy to your case manager yesterday, Your Honor.
20              THE COURT:  So, I have the order amending the
21    preliminary order of forfeiture to include substitute.  I
22    may find the original order that I need to sign first.
23              MR. JONES:  Yes.
24              THE COURT:  I see the unopposed motion for a
25    preliminary order of forfeiture.  I do not see the actual
```

10:46   (line 5)
10:46   (line 10)
10:46   (line 15)
10:46   (line 20)
10:47   (line 25)

order itself, but it is so ordered from the bench.  And then

I will sign the order confirming a written order, if

necessary.

           In regards to the order --

10:47          MR. JONES:  I do have an additional copy, Your

Honor.

         THE COURT:  Oh.  Very well.

           That order has been signed.  The Court has

also now been presented with the order -- amended

10:48  preliminary order of forfeiture to include substitute

assets.  It has been signed by the Defendant as well as all

counsel.  The Court has signed that as well.

           Anything else from the government?

         MR. JONES:  No, Your Honor.

10:48          MR. CESTARO:  One other, if I may.

         THE COURT:  Yes.

         MR. CESTARO:  I would just like to note for the

record that the Defendant has waived his right to appeal the

sentence pursuant to the agreement.

10:48          THE COURT:  Pursuant to the plea agreement?

         MR. CESTARO:  Yes.

         MR. SCHNEIDER:  It's in the plea agreement, Your

Honor.  He has waived his right to appeal.  But I think the

Court -- There still is an admonishment that --

10:48          THE COURT:  Yes.

1          MR. SCHNEIDER:  -- it is required that you advise

2     him of his right to appeal even though there is a waiver --

3          THE COURT:  Mr. Hernandez, under some circumstances

4     a defendant also has the right to appeal the sentence.

10:48   5     However, a defendant may waive that right as part of a plea

6     agreement.

7               You have entered into a plea agreement which

8     waives some or all of your rights to appeal the sentence

9     itself.  Such waivers are generally enforceable.  But if you

10:49  10     believe the waiver itself is not valid, you can present that

11     theory to the appellate court.

12               If you appeal, that appeal must be filed

13     within 14 days of the entry of judgment.  If you cannot

14     afford to pay the cost of appeal, you can ask to proceed

10:49  15     without payment of costs.  You have the right to have an

16     attorney appointed to represent you on appeal if you cannot

17     afford an attorney.

18               Anything else from the government?

19          MR. JONES:  No, Your Honor.

10:49  20          THE COURT:  Anything else from the defense?

21          MR. SCHNEIDER:  No, Your Honor.  Thank you very

22     much.

23          THE COURT:  Very well.

24          THE DEFENDANT:  Thank you, Your Honor.

10:49  25          THE COURT:  The Defendant is hereby remanded into

1    the custody of the deputy United States marshals.

2                    We are adjourned.  You're excused.

3          MR. JONES:  Thank you, Your Honor.

4          MR. CESTARO:  Thank you, Your Honor.

5                    COURT REPORTER'S CERTIFICATE

6          I, BRUCE SLAVIN, certify that the foregoing is a

7    correct transcript from the record of proceedings in the

8    above-entitled matter, to the best of my ability.

9

10                                  *s/Bruce Slavin*
                                   BRUCE SLAVIN, RPR, CM
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25